IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MALIK E. DELEON,<br>**Plaintiff** | :<br>:<br>:    No. 1:21-cv-289 |
| v. | :<br>:    (Judge Rambo) |
| ROBERT MARSH, *et al.*,<br>**Defendants** | :<br>: |

## MEMORANDUM

Presently before the court is the Medical Defendants' motion to dismiss, the DOC Defendants' partial motion to dismiss, Plaintiff's motion to compel discovery, and Plaintiff's motion for leave to amend the complaint. For the reasons that follow, the motions to dismiss will be granted, Plaintiff's claims against Defendants Ackerman, Kollman, Marsh, Hoffman, and Kephart will be dismissed, the motion to compel discovery will be denied, the motion for leave to amend will be deemed withdrawn, and Plaintiff will be granted leave to amend his complaint to cure the pleading defects identified by the court with respect to his deliberate indifference claim and his claims against Marsh and Hoffman.

**I.      Background and Procedural History**

*Pro se* Plaintiff Malik E. DeLeon ("DeLeon"), an inmate in the Coal Township State Correctional Institution ("SCI-Coal Township") who was incarcerated in the Benner Township State Correctional Institution ("SCI-Benner Township") at all relevant times, initiated this case through the filing of a civil rights complaint

under 42 U.S.C. § 1983 on February 17, 2021. (Doc. No. 1.) Defendants Marsh, Hoffman, Shaw, Baumgardner, Adams, Brant, Breeden, Smith, and Kephart ("DOC Defendants") answered the complaint on July 23, 2021. (Doc. No. 26.) Defendants Ackerman and Kollman ("Medical Defendants") moved to dismiss the complaint on July 26, 2021. (Doc. No. 27.) On September 10, 2021, DeLeon moved for leave to amend his complaint so as to add a claim of negligence against the Medical Defendants. (Doc. No. 34.) The court granted Deleon's motion for leave to amend on October 4, 2021, allowing DeLeon to file an amended complaint on or before November 4, 2021. (Doc. No. 38.)

DeLeon subsequently filed an "amendment to complaint," wherein he stated the basis for his proposed negligence claim against Defendants Ackerman and Kollman, but did not include any of the other claims that were included in his original complaint. (Doc. No. 40.) Because it appeared to the court that DeLeon did not intend for this incomplete filing to supersede his original complaint, the court issued an order on November 9, 2021, which disregarded the "amendment to complaint" and *sua sponte* extended the deadline for DeLeon to file an amended complaint to December 9, 2021. (Doc. No. 48.) DeLeon subsequently filed an amended complaint on November 26, 2021 (Doc. No. 51), but then filed a letter to the court on December 1, 2021, requesting that the court disregard that amended complaint and allow him to file a new amended complaint by the court-imposed

deadline. (Doc. No. 52.) The court granted DeLeon's request on December 3, 2021, and struck DeLeon's November 26, 2021 amended complaint from the record. (Doc. No. 53.) DeLeon then filed a new amended complaint on December 7, 2021. (Doc. No. 54.) This amended complaint remains the operative pleading in this case and shall be referred to as the amended complaint throughout the remainder of this opinion.

According to the allegations in the amended complaint, DeLeon was housed in SCI-Benner Township's Restricted Housing Unit ("RHU") on May 22, 2019 at approximately 11:15 a.m. when Defendants Shaw, Baumgardner, Adams, Brant, and Breeden came to his cell and began confiscating his personal property. (*Id.* at 10.) DeLeon asked to speak to Defendant Shaw, who was the lieutenant on duty, and asked Shaw why his property was being confiscated. (*Id.*) Shaw allegedly told DeLeon that he did not know why the property was being confiscated and that he was "going off what [his] officers told [him]." (*Id.*) DeLeon allegedly requested that his legal materials not be confiscated because he was working on a court filing in a case under Pennsylvania's Post-Conviction Relief Act ("PCRA"). (*Id.*) Shaw allegedly responded that he did not care about that and that the officers would be taking everything. (*Id.*)

During this incident, DeLeon allegedly asked to speak with a "psych doctor." (*Id.*) His request was granted, and a doctor named Mr. Hall came to the

cell. (*Id.*) DeLeon told Hall that he did not feel safe and that he worried the Defendants were going to harm him. (*Id.*) Hall told the officers to place DeLeon in a psychiatric observation cell. (*Id.*) DeLeon allegedly told Shaw that he did not feel safe, but Shaw told him not to worry, that the members of his staff would act professionally, and that DeLeon just needed to follow the orders given by Defendant Brant. (*Id.*)

After having this conversation with Defendant Shaw, DeLeon allowed the officers to place him in handcuffs and waited for them to open his cell door. (*Id.*) The door opened, at which point Defendant Brant allegedly grabbed DeLeon's left arm and Defendant Adams grabbed DeLeon's right arm. (*Id.*) The officers pulled DeLeon towards a nearby stairwell. (*Id.*) As they began to descend the stairwell, Brant and Adams allegedly slammed DeLeon face first into a wall, which broke DeLeon's glasses. (*Id.*) DeLeon allegedly was not resisting in any way. (*Id.*) The Defendants then slammed DeLeon to the floor. (*Id.*) Adams allegedly pressed DeLeon's head into the floor and said, "this is what you get for running your mouth." (*Id.*) DeLeon's hands and legs were also allegedly "twisted up" during this incident to cause him pain. (*Id.*) Defendants Breeden and Smith were the officers who allegedly twisted up DeLeon's hands and legs. (*Id.*) Defendants Baumgardner and Shaw allegedly watched the assault by Brant, Adams, Breeden, and Smith and did nothing to stop it. (*Id.*) After the assault, the Defendants

allegedly placed DeLeon into a cell with no mattress or running water for several hours. (*Id.*)

Later that day, at approximately 8:00 p.m. or 9:00 p.m., Defendant Kephart, who was employed by the prison as a Licensed Practical Nurse ("LPN"), came to DeLeon's cell as part of her rounds to distribute night-time medication to inmates. (*Id.*) When Kephart got to DeLeon's cell, DeLeon stuck his hand through the tray in his cell door and showed her a "gash" on his left hand that he allegedly suffered during the assault by the other Defendants. (*Id.*) DeLeon told Kephart that he needed Band-Aids and perhaps ice and ointment for the gash, which was still bleeding. (*Id.*) DeLeon also complained about swelling and bruising on his face. (*Id.*) Defendant Kephart allegedly responded, "No I cannot give you anything. I'm doing pill line not treatment line!" (*Id.*) DeLeon asked her if she could bring the requested items after she had finished distributing medication, but Kephart allegedly said "No! Hopefully you will see the doctor tomorrow." (*Id.* at 11.) Sometime later, DeLeon was given a misconduct report authored by Defendant Adams, which the complaint alleges was "falsely written." (*Id.*)

DeLeon was allegedly released from the RHU on July 20, 2019. (*Id.*) On July 23, 2019, he allegedly was still experiencing pain, tingling, and numbness in his hand, which led him to seek medical attention in the prison. (*Id.*) Defendant Ackerman, who was a Physician's Assistant in the prison, gave DeLeon an

injection in the hand to alleviate the tingling and numbness. (*Id.*) DeLeon alleges that the injection did not alleviate the tingling and numbness and instead left him with "skin pigmentation" in between his index and middle fingers and on the back of his hand. (*Id.*)

DeLeon allegedly saw Defendant Kollman, a physician in the prison, on December 24, 2019 about the pain, tingling, and pigmentation in his hand. (*Id.*) DeLeon requested to be seen by an outside physician for an MRI and a nerve conduction study. (*Id.*) Defendant Kollman allegedly denied the request. (*Id.*)

The complaint names as Defendants Shaw, Baumgardner, Adams, Brant, Breeden, Smith, Kephart, Ackerman, and Kollman, along with Robert Marsh and "Hoffman." (*Id.*) Defendants Marsh and Hoffman are not mentioned anywhere in the complaint's factual allegations, though the complaint identifies them as the prison's superintendent and security captain, respectively. (*Id.* at 3.) DeLeon raises claims for excessive force and failure to intervene against Shaw, Baumgardner, Adams, Brant, Breeden, Smith, Marsh, and Hoffman; a claim for deliberate indifference to a serious medical need against Kephart; and claims for deliberate indifference and negligence against Ackerman and Kollman. (*Id.* at 6-7.) He seeks damages from all Defendants. (*Id.* at 12.)

The Medical Defendants moved to dismiss the amended complaint on December 28, 2021. (Doc. No. 61.) The Medical Defendants argue that dismissal

is appropriate because DeLeon has failed to allege the elements of deliberate indifference to a serious medical need and because he has failed to file a certificate of merit with respect to his negligence claim. (Doc. No. 62.) The DOC Defendants filed a motion for partial dismissal on January 20, 2022. (Doc. No. 68.) The DOC Defendants argue that the claims against Kephart should be dismissed for failure to allege deliberate indifference and that the claims against Defendants Marsh and Hoffman should be dismissed because they were not personally involved in the alleged violations of DeLeon's civil rights. (Doc. No. 72.) Briefing on the motions to dismiss is complete and the motions are ripe for disposition. (*See* Doc. Nos. 62, 72, 86, 88, 90.)

Subsequent to the filing of the motions to dismiss, DeLeon filed a motion to compel discovery on March 14, 2022. (Doc. No. 81.) The motion seeks a court order compelling production of documents that DeLeon requested on July 26, 2021. (*Id.*) DeLeon has also filed a motion for leave to amend the complaint, seeking leave of the court to add a retaliation claim against Defendant Ackerman. (Doc. No. 87.) According to the motion, DeLeon sought medical attention on February 25, 2022 and requested that he be seen by a Physician's Assistant other than Ackerman because of the pending legal claims that DeLeon had against Ackerman. (*Id.*) Ackerman purportedly told DeLeon that he could either receive medical care from Ackerman or leave the medical department. (*Id.*) DeLeon

7

refused to be treated by Ackerman and left. (*Id.*) The motion to compel discovery and motion for leave to amend are also ripe for the court's disposition. The court addresses all four pending motions below.

II.     **Legal Standards**

    A.     **Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)**

When ruling on a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560

(3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B. Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### III.  Discussion

#### A.  Motion to Compel Discovery

The court will first address DeLeon's motion to compel discovery, which seeks to compel production of medical records and photos related to DeLeon's alleged injuries and video footage of the May 22, 2019 incident. (*See* Doc. Nos. 81-82.) The DOC Defendants represent in response that they have produced the medical records and the video evidence, but that an initial report from prison staff indicated that DeLeon declined to view the video. (Doc. No. 85.) The DOC Defendants also note that DeLeon's motion appears to suggest that additional video evidence exists. (*Id.*) The DOC Defendants note that they are not aware of any such additional video evidence but represent that they will supplement their

11

discovery responses if additional video evidence is discovered. (*Id.*) DeLeon responds that he believes that relevant video evidence has been deleted or that the DOC Defendants are willingly withholding evidence. (*Id.*) Because DeLeon has not offered any support for these assertions, the court at this time will credit the representations made Defendants' counsel that all relevant video evidence has been produced to DeLeon. DeLeon's conclusory accusations of spoliation or withholding of evidence are not sufficient to disregard a representation made in good faith by an officer of this court. Accordingly, because the record before the court indicates that all of the material sought in DeLeon's motion to compel discovery has already been produced, the court will deny the motion to compel.

## B.     Deliberate Indifference

Turning to the motions to dismiss, the court will first consider whether dismissal of DeLeon's deliberate indifference claims is warranted. To state a claim upon which relief may be granted for deliberate indifference to a serious medical need, a plaintiff must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering,' and a doctor has diagnosed the condition, or the need for treatment would be obvious to a lay person." *Dooley v. Wetzel*, 957 F.3d 366, 374

(2020) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)).

In this case, DeLeon alleges deliberate indifference to a serious medical need by Defendants Kephart, Ackerman, and Kollman. Having reviewed the amended complaint, however, the court finds that it fails to state a deliberate indifference claim upon which relief may be granted. The court addresses the deliberate indifference claim against each defendant in turn.

With respect to Defendant Kephart, DeLeon alleges that she was deliberately indifferent to a serious medical need because he showed her the gash on his hand and asked for Band-Aids, ice, and ointment, but she did not provide those items to him. (Doc. No. 54 at 10.) The court finds these allegations insufficient to allege deliberate indifference to a serious medical need. DeLeon's allegation that he had a "gash" on his hand is not sufficient to allege a serious medical need. It is not clear from the complaint that failing to treat the gash could lead to substantial and unnecessary suffering: based on the allegations in the complaint, it appears that the gash was nothing more than a *de minimis* injury that did not require medical attention. Indeed, it appears from the complaint that after speaking with Kephart DeLeon did not seek any further medical care for his hand until July 20, 2019, approximately two months after he purportedly sustained the injury, and this was

13

to treat continued pain, tingling, and numbness in the hand, not the gash that Kephart allegedly refused to treat.

Furthermore, even assuming that the gash constituted a serious medical need, it does not appear that Kephart was deliberately indifferent to the need. According to the allegations in the complaint, Kephart said that she could not provide the requested items because she was delivering medication to other inmates, but she also stated, "hopefully you will see the doctor tomorrow." (Doc. No. 54 at 11.) Thus, it appears from the complaint that Kephart encouraged DeLeon to seek medical care for the gash on his hand and that she did not provide care in the moment only because she was engaged in other duties. (*Id.*) This is not sufficient to allege deliberate indifference.

With respect to Defendant Ackerman, DeLeon alleges that Ackerman was deliberately indifferent to a serious medical need because DeLeon sought treatment from him for the pain, tingling, and numbness in his hand, and Ackerman gave DeLeon an injection that was supposed to stop the pain but instead caused "skin pigmentation" on DeLeon's hand. (Doc. No. 54 at 11.) DeLeon alleges that before giving the injection, Ackerman, "should have . . . known what the side effect[s] w[]ere." (*Id.*) These allegations are insufficient to allege deliberate indifference to a serious medical need. It is not clear from the complaint that the pain, tingling, and numbness in DeLeon's hand was a serious medical need. Even

14

assuming that it was a serious medical need, however, the allegations in the complaint do not show deliberate indifference by Ackerman.  It appears that Ackerman provided medical treatment to DeLeon to treat the symptoms DeLeon was experiencing in his hand and that Ackerman gave DeLeon an injection for purposes of alleviating the symptoms.  Thus, rather than alleging deliberate indifference, the amended complaint appears to allege that Ackerman diligently treated DeLeon and attempted to cure the symptoms he was experiencing.  Although DeLeon alleges that Ackerman should have known the side effects that would be caused by the injection, this allegation at most amounts to negligence and is insufficient to allege deliberate indifference.

With respect to Defendant Kollman, DeLeon alleges that Kollman was deliberately indifferent to a serious medical need because DeLeon requested that he be referred to an outside physician for an MRI and a nerve conduction study but Kollman did not issue the referral.  (Doc. No. 54 at 11.)  This is insufficient to allege deliberate indifference, as it appears to be nothing more than DeLeon's disagreement with Kollman as to whether an MRI and a nerve conduction study were necessary.  *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) ("'[M]ere disagreement as to the proper medical treatment' does not 'support a claim of an eighth amendment violation.'" (quoting *Monmouth Cty. Corr. Inst. v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987))).  Accordingly, DeLeon's

deliberate indifference claims against Defendants Kephart, Ackerman, and Kollman will all be dismissed.

### C. Negligence

Under Pennsylvania Rule of Civil Procedure 1042.3, a plaintiff must file a certificate of merit in any case in which the plaintiff alleges that "a licensed professional deviated from an acceptable professional standard" within sixty days after filing the complaint. Pa. R. Civ. P. 1042.3. Here, DeLeon first filed his negligence claim through his amended complaint on December 7, 2021. Thus, he was required to file a certificate of merit no later than February 5, 2022. DeLeon has not filed a certificate of merit, and the Medical Defendants seek dismissal of his negligence claim for this failure. (Doc. No. 62 at 14-20.) DeLeon argues that a certificate of merit is not necessary because his claim is based on a theory of "ordinary negligence" and not professional negligence or malpractice. (*See* Doc. No. 86 at 1-2.)

DeLeon's argument is without merit. To establish a claim of negligence under Pennsylvania law, a plaintiff must prove (1) that the defendant owed a duty of care to the plaintiff; (2) that the defendant breached that duty; (3) that there was a causal connection between the breach and the plaintiff's resultant injury; and (4) that the plaintiff suffered actual injury or damage. *Brewington ex rel. Brewington v. City of Philadelphia*, 199 A.3d 348, 355 (Pa. 2018). Because the negligence of a

medical professional is not a matter that is within the ordinary knowledge of a layperson, expert testimony is ordinarily required to establish the standard of care to which the defendant medical professional must conform his conduct. *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003). Thus, by its very nature, a negligence action against a medical professional is an action alleging that that professional "deviated from an acceptable professional standard," and a certificate of merit is therefore required. Pa. R. Civ. P. 1042.3. Plaintiff did not file a certificate of merit with respect to his negligence claim, so dismissal of that claim is warranted.

### D. Personal Involvement

Finally, the court will address the DOC Defendants' argument that the claims against Defendants Marsh and Hoffman should be dismissed because they were not personally involved in the alleged violations of DeLeon's civil rights. (Doc. No. 72 at 6-7.) A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be evidence of personal direction or actual knowledge and acquiescence. *Id.*

Here, Defendants Marsh and Hoffman are not mentioned anywhere in the complaint's factual allegations, and DeLeon appears to name them as Defendants solely because of their positions as superintendent and security captain. (Doc. No. 54 at 3.) The claims against Marsh and Hoffman are thus based entirely on a theory of *respondent superior*, which is not a sufficient basis to allege personal involvement. *See Rode*, 845 F.2d at 1207. The court will dismiss the claims against Marsh and Hoffman on that basis.

E.     **Leave to Amend**

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Here, amendment of DeLeon's negligence claim would be futile given that he has failed to file a certificate of merit as required by Pennsylvania Rule of Civil Procedure 1042.3. The court cannot conclude, however, that amendment would be inequitable or futile with respect to DeLeon's deliberate indifference claim. Accordingly, the court will grant leave to amend to allow DeLeon an opportunity to cure the defects identified by the court with respect to his deliberate indifference claim and his claims against Defendants Marsh and Hoffman.

DeLeon has additionally moved for leave to amend the complaint to add a claim of retaliation against Defendant Ackerman based on an incident that occurred after DeLeon initiated this case. (Doc. No. 87.) DeLeon has not filed a brief in support of the motion, and the deadline for doing so has expired under the Local Rules. *See* M.D. Pa. L.R. 7.5. Accordingly, the motion for leave to amend is deemed withdrawn. *See id.* With that in mind, DeLeon will only be granted leave to amend his complaint to cure the deficiencies identified by the court in this opinion; he will not be granted leave to amend his complaint to add the retaliation claim against Ackerman.

## IV. Conclusion

For the foregoing reasons, the motions to dismiss will be granted; DeLeon's claims against Defendants Ackerman, Kollman, Marsh, Hoffman, and Kephart will be dismissed; the motion to compel discovery will be denied; the motion for leave to amend will be deemed withdrawn; and DeLeon will be granted leave to amend his complaint to cure the pleading defects identified by the court with respect to his deliberate indifference claims and his claims against Marsh and Hoffman. An appropriate order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: July 11, 2022